Statement of Facts.

## A. S. HURLBUTT v. PETER BUTENOP.

CERTIFIED COPY OF A DEED AS EVIDENCE.—A party claiming title under a deed duly acknowledged is entitled to have a certified copy of the record of the same received in evidence, upon making statute proof that he never had control of the original, and that it is not then in his power or control.

RECORD OF DEED NOT PROPERLY ACKNOWLEDGED.—The record of a deed not properly acknowledged does not give constructive notice to subsequent purchasers in good faith.

DECREE IN ACTION BROUGHT BY ONE FOR HIMSELF AND ON BEHALF OF OTHERS.— Where an action is brought by one of several persons, claiming title from a common source, on his own behalf and in behalf of all others interested in the same manner as himself, to set aside a deed executed to others by the same grantor under whom plaintiff claims, on the ground of fraud, the parties named in the complaint, for whose benefit the action is brought, are entitled to the benefit of the decree declaring the deed fraudulent.

PURCHASERS AFTER *lis pendens* FILED.—If a *lis pendens* is filed at the commencement of an action brought to set aside a deed on the ground of fraud, parties who buy of the defendant pending the litigation are bound by the decree.

ASSESSMENT MUST FIX VALUATION ON PROPERTY.—An assessment of town lots for taxation, which does not give their cash valuation either in gross or detail, is radically defective. Figures placed opposite town lots in an assessment roll, without any statement whether they stand for cents, dollars, or eagles, do not fix any valuation to the same.

TAX DEED—WHEN VOID.—A tax deed executed in 1860, for land sold for taxes, is void if the assessment shows that there was not any cash valuation of the lot which the deed purports to convey.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

In the suit brought by Edward Gibbons, on behalf of himself and others, the complaint set forth the execution of the deed of Vincente Peralta to Hays, Caperton *et als.*, dated 13th day of March, A. D. 1852, and that he, Gibbons, had become a purchaser under the said deed of a certain tract of land in the City of Oakland; that a large number of persons, several hundred, had likewise become purchasers under the said deed, and for valuable considerations; that the parties similarly situated with himself were numerous, and that it was impracticable to bring them all before the Court.

The plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*George & Loughborough*, for Appellant.

The plaintiff sought to introduce copy of deed under the authority of the second section of the Act of 1857. It was, therefore, upon the plaintiff to *show*—not merely *swear*—that the original deed was not under his control, or that it was lost, before he should be permitted to use the certified copy. This, we contend, he failed to do. He *swore*, it is true, *in the words of the statute*, that he had not control of the original. His language was : " *I never had control of the original deed, and it is not now in my power or control.*"

This was only swearing to a *conclusion* of law, but does not *show to the Court* that the original was not under his control.

" It is an established rule that the best evidence must in all cases be given of which the nature of the fact to be established or negatived is capable. This is a rule of policy grounded upon a reasonable suspicion that the substitution of inferior for better evidence arises from some sinister motive, and an apprehension that the best evidence, if produced, would alter the case to the prejudice of the party." (Petersdorff's Com. Law, Tit. Evidence ; *Bagley* v. *McMickle*, 9 Cal. 445.)

" The rule which excludes substitutionary evidence so long as the best evidence can be had, was made for the prevention of fraud, and has become essential to the pure administration of justice." (1 Green. Evidence, Sec. 82.)

"And the rule being general in its application, it *would not be sufficient to rebut this presumption in any particular case*, so as to let in the substitutionary evidence. Thus it would be of no avail to prove that the *copy* tendered in evidence was in every respect quite correct ; it would be still inadmissible while it was in the *power* of the party to produce the *original.*" (1 Phil. on Ev., 4th Am. Ed., 570.)

" The Act of 1851, which provided that copies of papers from the Recorder's office shall be received in evidence with the like effect as the original could be if produced, did not dispense with the production of the original if it could be obtained." (*Macy* v. *Goodwin*, 6 Cal. 582.)

Before a certified copy can be offered in evidence, the party *must prove the loss of, or his inability to produce the original.* Per Judge Field, in *Touchard* v. *Keyes*, 21 Cal. 211.

As to the sufficiency of the proof that a deed is lost, see *Fallon* v. *Dougherty*, 12 Cal. 105, and the cases there cited.

As to what proof, or rather what facts are sufficient to show the inability of the party to produce the original, see numerous cases cited in Note 446 to 2 Phil. Ev., Edwards' Ed., p. 514 ; see also p. 552.

The tax deed of the defendant shows upon its face that all the requirements of the law were fully complied with, and is therefore *prima facie* evidence of all the matters set forth by it and of title in the grantee. (*O'Grady* v. *Barnhisel*, 23 Cal. 287.

If the plaintiff was the owner of the land, it was his duty to pay the taxes. He could not have been misled by any act of the defendant, for the land was assessed to P. C. Lander, who conveyed to the plaintiff after the lien had attached and before the taxes became payable.

The defendant was under no obligation to the plaintiff to pay these taxes, nor can he be required to hold the tax title in trust for the plaintiff, for there was no privity in estate nor fiduciary relation existing between them.

The defendant was under no obligation to the State to pay the taxes unless the land was his, or at least assessed to him as the owner.

*Samuel J. Clarke, Jr.*, for Respondent.

The proof was stronger than that required by the statute. The plaintiff testified that he never had control of the original deed, and in the very words of the statute, " it is not now in my power or control." The plaintiff's counsel argues that this was only swearing to a conclusion of law. Whether he swore to a conclusion of law or not, makes very little difference ; he swore to what the law required he should swear to.

But we differ from the counsel as to *what is a conclusion of*

*law.* When a party swears that he has not the control of a deed, we understand that he swears to a fact. The counsel also contends that the evidence did not show that the original was not under the control of the plaintiff. On this point we might cite one of the authorities referred to by the defendant himself—the case of *Bagley* v. *McMickle,* 9 Cal. 449. Judge Field there says "the preliminary proof is addressed to the Court, and as to its sufficiency the Court is the sole judge."

The only proof upon the question was the evidence we have cited. *No evidence* was produced on the other side; and the Court below, acting upon the only proof before them, admitted the certified copy in evidence.

The owner is not bound to select from a long list of property any particular lot, and make a calculation of the amount of tax supposed to be charged thereon; *that is a duty* imposed upon the *officers* of the law. That was the information that the assessment roll should convey to the owner.

Upon this point we refer to Blackwell on Tax Titles, page 176: "When one owns several tracts or parcels of land, they should be listed and valued separately, else the proceeding will be void. Thus, in *Skimin* v. *Hinman,* the statute required the Assessors to set forth in these lots the number of acres of unimproved lands which they may have taxed on each non-resident proprietor, and the value at which they may have estimated the same."

It appears from the statement in Blackwell, that three lots were charged to William Chemin: the aggregate value was put down at two hundred and forty dollars; the State and county tax at sixty-one cents; the number of acres; the town tax, three dollars and twenty-two cents, and the total tax, three dollars and eighty-three cents. The Court held the list illegal, saying a fair construction of the statute requires that each lot should be valued and assessed separately.

The lots may be owned by different persons, and if a joint valuation and assessment was allowed, one owner could not ascertain the amount of the tax on his own land, or pay or redeem the land when sold, without paying the tax upon all

the other land assessed with it, although in this case the several lots appear to have been owned *by one person.* That fact cannot dispense with the law, or excuse a deviation from it. (26 Maine, 228.) Blackwell then proceeds to cite the case of *Willey* v. *Scovill's Lessee,* 9 Ohio, 43. It appears from that case that there were *nine lots* assessed together. Mr. Justice Grinke says : " The law requires that the Auditor should so list and advertise the land as to furnish the owner with a description of the land subject to taxation, and that the sale shall be advertised and conducted in conformity with that rule." In this instance there was no assessment in gross upon the whole amount of the taxes chargeable upon the nine lots, and yet each lot was put up to pay the tax on it separately.

" The land is not treated as an entire part in the list advertisement for sale, but is so treated in the apportionment of the tax. Now, it is evident that the course pursued should be consistent with itself; if the lots might be treated as separate and distinct parcels of land, then the tax charged upon them should have corresponded with the fact in the description ; and if they should be treated as one entire tract, then, although the assessment of the tax in the advertisement in one aggregate sum would have been correct, the description of the land itself would have been erroneous, and so would the sale under it. In either case the title would be defective, and the Court was right in ruling out the evidence."

By the Court, SHAFTER, J.

This is an action of ejectment brought to recover the possession of Block Sixty-seven, situated in the City of Oakland, and is parcel of lands granted by the Mexican Government to Peralta. Both parties claim under the said grantee. The plaintiff, at the trial, offered in evidence, as part of his deraignment from Peralta, a certified copy of the record of a deed from Irving to one Marshal. The plaintiff was sworn and testified that he " never had control of the original deed, and that it was not then in his power or control." The defendant

objected to the admission of the document, on the ground that there was not sufficient evidence of the loss of the original, and that no diligence had been used to produce it. The objection was overruled by the Court, and the defendant excepted.

This ruling was correct. (*Skinker* v. *Flohr*, 13 Cal. 638.)

The plaintiff, having connected himself with J. C. Hays and others, grantees of Peralta, by deed dated March 13, 1852, and recorded March 17, 1852, on a defective acknowledgment, and having further proved that Peralta was in possession of the property in 1849, and that defendant was in possession at the commencement of the action, July 30, 1860, rested his case. The defendant then gave in evidence a deed of the premises from Peralta to Francisco Galindo, dated October 8, 1857, and recorded on that day, and a deed from Galindo to defendant, dated July 27, 1860, duly recorded. The defendant also introduced a tax deed to himself, dated July 27, 1860, recorded June 20, 1861. The plaintiff, in rebuttal, produced the tax certificate showing that the sale was to Henry Butenop and not to defendant, and also gave in evidence a deed from Galindo to Pacheco, dated September 24, 1858, and recorded on that day ; and also the judgment roll in an action brought by Edward Gibbons against Peralta and wife, Galindo, and Pacheco, on the 2d of February, 1859, in which action it was adjudged that the aforesaid deed from Peralta to Galindo, and the deed from Galindo to Pacheco, were fraudulent and void as to the plaintiff Gibbons, " and those on whose behalf he sues." It appears by the record that Gibbons sued on his own behalf and on behalf of all others claiming, as he claimed, under the deed of Peralta to Hays and others, of March 13, 1852. A notice of *lis pendens* was filed in the action, and, as we understand the record, on the day the action was brought.

The Court instructed the jury that the plaintiff had proved title in himself—that the defendant had failed to make out a defense, and that the plaintiff was entitled to a verdict—to which charge the defendant excepted.

1. Laying the decree in *Gibbons* v. *Peralta* out of account,

the case stands thus : The plaintiff proved title in himself through the unrecorded deed of Peralta to Hays and others, of March 13, 1852. The defendant then proved a title apparently better than that, through the recorded deed of Peralta to Galindo, of October 8, 1857. The plaintiff, however, for the purpose of showing that the defendant took nothing by Galindo's deed of July 27, 1860, proved that Galindo had no title at that date by showing a previous conveyance by him to Pacheco. Assuming that the evidence accomplished its purpose, yet standing by itself it demonstrated also that the plaintiff himself had no title, the deed of Peralta to Hays not having been duly recorded. There was evidence in the case tending to prove that Peralta was in possession in 1849, but none tending to prove any entry on the part of the plaintiff. But the case did not go to the jury on the state of facts suggested. The decree in the case of *Gibbons* v. *Peralta and others*, established that the deed from Peralta to Galindo, and the deed from Galindo to Pacheco, were nullities as to Gibbons and all others claiming under Peralta through his deed to Hays and others. The plaintiff herein is one of the unnamed parties for whose benefit that suit was brought, and as such is entitled to participate in the benefit of the decree. The defendant is bound by the decree, for there was a notice of *lis pendens* filed, and the defendant bought of Galindo pending the litigation. It is further to be observed, that the defendant neither proved nor offered to prove that Galindo was a *bona fide* purchaser under Peralta for a valuable consideration.

2. It is further insisted that the instruction was erroneous, for the reason that the defendant became the owner of the lands by force of the tax deeds.

The tax was assessed under the Act of 1857 and other Acts amendatory thereof and supplementary thereto. The assessment roll was put in evidence, from which it appeared that the block in question (No. 67, situated in Oakland township) was listed to P. C. Lander. The question discussed by counsel as to whether the defendant could purchase the property at tax sale, he having been in possession at the time the tax

was assessed, does not arise, for the reason that the record shows that the property was purchased by Henry Butenop, and there is no evidence in the case showing that the purchase was in trust for the defendant or by any collusion with him. It appears by the recitals in the deed that the certificate of sale issued to the purchaser was assigned by him to the defendant, and we shall assume, for all the purposes of this hearing, that the fact is established by force of the recitals. We consider that the assessment is radically defective in a number of particulars. There are seven distinct lots assessed to Lander, described severally by numbers, but their value is given neither in gross nor in detail. Under the head of "value of city and town lots," there are figures written off against the numbers of the lots respectively, and in case of Block Sixty-seven, the figures "500;" but whether they stand for cents or dollars or eagles does not appear.

It is to be further observed, in relation to the first three blocks, that they are flanked on the right, in the assessment roll, by a single sum, "14 50." The "total value of the property" is not represented otherwise than by the barren figures "21.05," which sum, if read as a whole number, is larger than the sum of the figures first referred to by fifty, and the "total tax" is set down as 32.63 cents. Passing by these obvious discrepancies, however, it is sufficient to say that the tax deed is void for the reason that it appears there was never any cash valuation of the lot which the deed purports to convey. (Acts 1857, p. 327, Sec. 4; Black. Tax Tit., 176, 193; *Huse* v. *Merriam*, 2 Greenleaf, 375.)

Judgment affirmed.