# SUPREME COURT

OF THE

# STATE OF ARKANSAS,

AT THE

## NOVEMBER TERM, 1884.

---

## MOORE ADM'R. T. M. JACKS v. TURNER, SH'FF., &C.

1.  TAXES : *Quashing assessment: Want of oath of Assessor.*
    The failure of the tax assessor to take the oath of office required
    by law is no ground for quashing the assessment on *certiorari.*
    His official character cannot be questioned in such collateral
    proceeding. *Parker v. Overman, 13 How., 137,* explained.

2.  SAME : *Same : Affidavit to assessment.*
    The Assessor of Phillips county attached to his assessment the fol-
    lowing affidavit :
    " I, B. W. Greene, assessor etc., do swear that I have made diligent
    enquiry to ascertain all the taxable property subject to taxation
    in Phillips county ; that so far as I have been able to ascertain,
    the same is correctly set forth in the foregoing return." HELD :
    That the omission to state in the affidavit, as required by law
    "that he had appraised each tract or lot of land at its true value
    in money," was no cause for quashing the assessment on *certio-
    rari,* in the absence of any showing that the assessor had not

made such appraisement. It would be presumed, in the absence of any charge to the contrary, that the Assessor, in making the assessment, had complied with the law.

3. FILING ASSESSMENT: *Date of filing. Presumption.*
When there is nothing to show the date of filing an assessment list with the County Clerk it will be presumed to have been filed on the day of the date of the assessor's affidavit attached to it.

4. SAME: *Same: Failure of Assessor to examine lands.*
The failure of the Assessor to personally view lands to ascertain their value is no cause to quash the assessment on *certiorari.*

5. TAXES: *Filing assessment. Time not essential.*
The filing of the assessment list with the County Clerk *by* the 3rd Monday in September, as required by section 6. of the revenue act of 1873, was not essential to the validity of the assessment or the levy of taxes at the succeeding term of the County Court.

6. PRACTICE: *Certiorari not converted by the court into bill for injunction.*
Proceedings by *certiorari* are of a special nature, having an appropriate practice, which was not destroyed by the Legislature abolishing forms of action; and they may not be converted by the court of its own motion into proceedings for injunction and transferred to the equity docket. This can be done only by the parties upon moulding their pleadings for equitable relief.

APPEAL from *Phillips* Circuit Court.

Hon. M. T. SANDERS Circuit Judge.

*Tappan & Hornor* for appellant.

The County Court had no jurisdiction to levy the taxes because no legal assessment of lands had been made by the assessor, for:

1. He did not file in the clerk's office his official oath required by law. *Sec.* 20, *Art.* 19, *Const.* In addition to this he is required to take the oath prescribed by *Acts* 1875, *Sec.* 6 *p.* 223.

Moore ad. T. M. Jacks v. Turner, Sheriff, etc.

2. He did not view each particular tract of land before valuing same. *Gantt's Dig. Sec.* 5117.

3. He did not return and file the assessment list of real property on or before the 3rd Monday in September. *Gantt's Digest, Sec.* 5116.

4. He did not append to his return the affidavit required by law. *Acts* 1775, *Sec.* 6 *p.* 223,

When the Legislature prescribes certain formalities in the assessment of property, they must be complied with. They are not useless, but are intended for the protection of the citizen from improper and unjust exactions, and enforcing the equal burdens of taxation. Time is essential to the performance of all these acts.

*Certiorari* is a direct proceeding to set aside the assessment and levy which are a judgment, and to stay execution for errors affecting the jurisdiction of the court, and is the proper remedy to reach an illegal levy. 34 *Ark.*, 419; 27 *Id.*, 675.

The assessment and levy is in the nature of a judgment, and when delivered to the collector with a warrant of collection is a process in the nature of an execution. 19 *Ark.*, 602; 21 *Id.*, 578. A valid assessment is necessary to give the County Court jurisdiction; if there be none, there is no charge upon lands. 21 *Ark.*, 578; *Hilliard on Taxation*, 291. There can be no legal assessment in any other mode than such as is expressly provided for that purpose by statute. 1 *Bush.* 259. The law must be followed to give the County Court jurisdiction. *Hilliard on Taxation*, 308; 7 *N. Y.*, 517.

*U. M. & G. B. Rose* for appellees.

1. Whether the assessor took the oath or not, he was assessor *de facto*, and as such his acts are valid. 22 *Ark.*, 559; 24 *Id.*, 474; 28 *Id.*, 312; *Burroughs on Taxation, p.*

200; 14 *Iowa*, 585; 10 *Ohio*, 278; 4 *Pet.*, 349; *Cooley on Taxation, p.* 191; *Blackwell on Tax Titles, p.* 98; 7 *N. H.*, 113; 17 *Ib.*, 420; 2 *Greenl.*, 218; 2 *Aiken,* 145; 16 *Iowa*; 509; 36 *Miss.*, 693.

2. The affidavit to the return is a substantial compliance with the law. It contained the one essential allegation that the assessment was correct. The others are immaterial. Revenue laws are now construed liberally, they are remedial in their character. 10 *Wall.*, 406; *Sedgwick on Construction,* 2d *Ed., p.* 288. The tax levy of an entire county should never be quashed for a mere technicality or irregularity. *Sec.* 35 *N. Y.*, 462; 48 *Id.*, 93; 5 *Pick.*, 496; 39 *Cal.*, 511; 21 *Me.*, 472; 7 *Kan.*, 210; 9 *Id.*, 296; 8 *Id.*, 561; 14 *Wis.*, 618; 11 *Id.*, 496; 17 *Id.*, 284; 22 *Ill.* 36. The writ of *certiorari* will never lie to quash a tax levy on account of mere irregularity. *Cooley on Taxation, p.* 533; 104 *Mass.*, 462; 48 *Barb.*, 173.

The act of Dec. 15, 1875 (*Acts* 1875, *p.* 178.) gives a person aggrieved by an assessment a remedy *by appeal;* where an appeal lies there is no remedy by *certiorari.* 18 *Ark.*, 380. *Certiorari* is not a writ of right, but is only granted in the discretion of the court to correct some grievance. *Id.; Cooley on Tax, p.* 530.

3. The fact the assessor did not view the lands does not appear from the record, and in this proceeding nothing can be considered which does not appear from the face of the record. 18 *Ark.*, 449; 21 *Id.*, 476; 30 *Id.*, 441. But if so, and plaintiff sustained injury he should have appealed.

4. Provisions as to *time* are usually held directory merely, unless the act specially provides that the act cannot be validly done after the time named. 22 *Ala.*, 126; 28 *Iowa*, 577; 21 *Pick.*, 76; 8 *Met.*, 181; 2 *Denie*, 160; 20 *Barb.*, 167; 17 *Ohio st.*, 608; 5 *Lans.*, 16; 30 *Iowa*, 355; 34 *Md.*, 569,

EAKIN, J. At the May Term, 1883, of the Phillips Circuit Court, Thos. M. Jacks filed a petition for a writ of *certiorari*, against Turner as collector, and Jarmon as clerk of the County Court, showing that he was the owner of a large amount of real estate in the county, a list of which was exhibited as a part of the petition, with the valuation and total tax of each tract or lot extended in separate columns, for the years 1881 and 1882. It is without authentication or file mark.

Further, that at the October Terms for the years 1881 and 1882, at the times fixed by law, for the purpose, the County Court levied taxes on said lands, without any jurisdiction or power. That they were not legally chargeable with taxes for those years, because no legal or valid assessment of the same had been made by the assessor, or filed in the clerk's office within the time required by law. That the pretended assessor had not taken the oath of office, required by law; that he had not appended to his assessment list the proper legal affidavit; and that in making the pretended assessment he had not viewed the lands to ascertain their value. He filed with, and as part of, his petition certified orders of the County Court, levying the taxes, and also a certified transcript of the affidavit made by the assessor, to the assessment list which he filed in 1880. This affidavit is dated Oct. 8th, 1880, and runs as follows:

"I, Barton W. Green, assessor, &c., being duly sworn, "make oath that I have made diligent effort to ascertain all "the taxable property being, or subject to, taxation in the "County of Phillips; that, so far as I have been able to as- "certain the same, it is correctly set forth in the foregoing "return."

The official oaths of the assessor for any of the years before, and up to 1882, could not be found on file in the office. The petitioner charged that said collector was

then attempting to enforce the payment of the taxes so illegally levied, and would return the lands delinquent. He prayed for a writ of *certiorari* to the clerk of the County Court, to bring up a transcript of said orders, levying taxes, and of the assessor's oath, and his affidavit to the return of the real estate assessment of 1880 ; and, further, that the collector and clerk be restrained from further proceedings to collect the taxes on said lands; and for all other proper relief.

The defendants acknowledged service, and waived notice, but filed no demurrer, response, or other pleading.

The Circuit Court denied the writ and dismissed the petition. Jacks appealed, and, having died since, the cause has been revived in the name of his administrator.

The counsel for appellant rely upon four points which will be considered separately.

1. TAXES: Quashing Assessment. Want of oath of Assessor.

First : That the assessor had never taken an official oath, and was not authorized to act as such.

If it were conceded that the presumption should prevail, that he had not taken an official oath, because none could be found by the clerk on diligent search, the point would still be not tenable. His official character in this proceeding is attacked collaterally. It is conceded by fair implication in the petition that he was acting as assessor and was recognized as such. Every consideration of public policy, upon which the rule of law is grounded that the character of officers *de facto* shall not be questioned in collateral proceedings, applies with equal, if not greater force, to the officers engaged in the collection of the revenue. It is essential to the well-being of the whole community that collections should be made promptly to meet the exigencies of the government. Endless embarrassment in the administration of the laws, and in maintaining the public credit, might occur, if each and every tax-payer

on the eve of the collections might impede them by questioning the official character of some one concerned in the chain of legal formalities, through which taxes are exacted. There is no ground for the distinction, and so far as we are advised, no adjudication sustaining it, save the case of *Parker et al v. Overman* decided by the Supreme Court of the United States, on appeal from the Circuit Court of Arkansas (13 *Howard* 137). That case, although it has never given satisfaction in this State, is distinguishable from this in several important particulars, which may have afforded ground for taking it out of the general rule. Under the Constitution of 1836, then in force, there was no such officer as an assessor. It was provided by statute that the sheriff should be such *ex officio,* and it was required of him that he should, *each year,* file a certain affidavit, before a certain day, for the faithful and impartial performance of the duties specially pertaining to assessments. Upon his neglect to do this within the time prescribed by statute it was provided that his office should be *deemed vacant,* without further action on the part of any court or person. (*Digest by English in* 1848, *p.* 871). The case of *Parker et als v. Overman (Supra)* seems from a statement by Mr. Justice Grier, delivering the opinion, to have originated in a State court here, in Chancery, by proceedings on the part of Overman to confirm a tax title, which was resisted by Parker et als, residents of another State, and removed to the Federal Court. There Overman was successful. Upon appeal to the U. S. Supreme Court, it was held that in such a proceeding, expressly provided to give every one interested, an opportunity to contest the legality and regularity of every step in the proceedings, it might be shown that the preliminary affidavit was not filed in time. This is regarding the affidavit not as an oath of office, but as a preliminary step to the assessment proceedings—a part, as it were, of the legal machinery by which the revenue was to

*Parker v. Overman, 13 How. explained.*

be collected, or the citizen deprived of his property; and this is certainly the correct view of the case as our law then stood. Oaths of office are taken once for all, during the term. This affidavit was taken *each year* by the sheriff, in the inception of his duties regarding assessment for that year, and with reference to those duties.

Now, under the Constitution of 1874, Assessors are distinct officers, not *ex-officio*, but by right of their election and commissions as such. They stand upon the same ground with other county officers taking one general oath of office for their whole terms (*See Sec. 46 of Art. 7, and Sec. 20 of Art. 10*.). This oath has no special connection with any particular proceeding, as did the old oath of the Sheriff taken, as preliminary to the act of assessing. If he should fail to take it, before the first day of January succeeding his election his office may be *declared* vacant ( *See sec. 7 of Act of March 5th* 1875, *p.* 224.). But this presupposes some step to be taken for the purpose, and if none be taken it leaves the presumption *prima facie* at least, that there had been an oath of office filed.

Unless the decision in the case of *Parker et als. v. Overman, supra,* can rest upon the distinction between a general oath of office, and a special oath required by an officer each year as a preliminary step in a special duty, then I think it should be disregarded as not well considered.

It is contrary to reason and the current of authority, all of which go to show that the acts of an officer *de facto* are to be taken as valid in all collateral proceedings. See, specially with reference to assessors (*Rockendorf v. Taylor's lessee,* 4 *Peters* 358; *Ray v. Murdock,* 36 *Miss.,* 693 ; *Scott v. Watkins* 22 *Ark.,* 559. And also abundant authorities cited by Mr. Cooley pp. 189 and 190 of his work on Taxation; and by Mr. Burroughs in his work on p. 200). The fact, that

Moore ad. T. M. Jacks v. Turner, Sheriff, etc.

it did not appear that the assessor had ever taken the *oath of office* afforded no ground for quashing the assessment.

The 2nd ground urged by appellant's counsel is that the proper oath was not filed with the return of the assessment. The form prescribed by the statute is as follows :

"I —— —— Assessor, do solemnly swear, that the foregoing is correct, and that I have appraised each tract or lot of land at its true value in money." 2. Affidavit to assessment.

As will be seen by reference to the affidavit heretofore set forth as actually made ; and denuding the latter of surplusage ; the assessor failed only to state " *totidem verbis* " that he had appraised each lot or tract *in money.* He does say that his return correctly sets forth the taxable property of the county so far as he has been able to ascertain it. The assessment list is not given but we must presume that it was drawn up in columns as required by law, with an appraisement extended to each tract representing its value, and the law required that value to be expressed in money. Whether the term " correctly " can be fairly extended to cover the whole of the list, with all its columns, showing owners, sections, ranges, townships, acres, value per acre, as improved or unimproved, and total value, is the question. To be *correct,* if the affidavit covers all these, it is necessary that the valuations should be in money. If it can only cover the the description of the lands by metes, bounds and acres, then it is not in compliance with the statute. It is certainly an irregular and defective affidavit, in its best aspect, but aided by the presumption which prevails in favor of officers, that they have discharged their legal duties, and in the absence of the slightest proof that the assessment list itself was illegally made up, we are loth to attach such importance to the defect, as to make it jurisdictional, and defeat the whole tax levies of the county, made under it, for that and successive years. The question presented is purely jurisdictional, sup-

possing that an assessment had been legally made, in accordance with the money value of the property and that it had been returned by the assessor and was before the court when the orders were made levying the taxes; and that there was nothing in the assessment or levy intrinsically unjust towards the petitioner, as imposing upon him unfair or disproportioned burdens; all which we must suppose in the absence of charges to the contrary, upon the general ground that officers are presumed to have done their duty : then did the ommission in the affidavit so paralyze the County Court, that it had no power to proceed and levy the taxes?

In the outset we may well say that to hold in the affirmative, would be fatal to any tolerably accurate estimate, in advance, of public revenues.  Assessors are not necessarily men skilled in forms, and if their affidavits, made in good faith, should when critically analyzed, be found defective in expressing some material thing, and that should annul all levies made upon them, then upon each annual tax-gathering, the County Courts, and officers would be so overwhelmed and be-pelted with *certioraris* and injunctions, that the business of tax collecting would be wholly inadequate to the public necessity.  Upon the other hand each citizen has the right to claim that he shall not be called upon to contribute to the public revenues except in accordance with strict and uniform laws.  The *argumentum ab inconvenienti* is well balanced, but the tendency of the courts in modern times seems to be more liberal towards the government, in which is wrapped the common prosperity of all, than zealous of the rights of individuals, who show no substantial grievance; especially in cases, where the contest is not between A and B, for the ownership of a particular piece of property alleged to have been improperly sold for taxes, but between some citizen and the whole community as to whether the collector has the right to collect any taxes at all from anybody.  For

jurisdictional questions cut that deeply. Where the tax is not intrinsically unjust or oppressive the great mass of citizens would prefer to discharge it by payment. But if the whole levy be quashed they have not that privilege.

The question has been one of much perplexity, to determine the degree of strictness with which statutes for taxation must be followed. So much so that the Supreme Court of Wisconsin in the case of *Mills v. Gleason*, 11 *Wis., p.* 496, remarked through Mr. Justice Paine, that " perhaps the only method of solving the difficulty would be to hold, that no objection which did not go to the very groundwork of the tax, so as to affect materially its principle, and show it 'must necessarily be illegal, ought to have the effect of rendering the whole tax invalid. But where the objection is a mere non-compliance with some direction of the statute, notwithstanding which the tax may have been entirely just or equal, it ought not to have that effect. If it did the collection of taxes would be rendered practically impossible."

That was an action to enjoin a sale of land for taxes on the ground of an illegal levy by the city of Madison. The proceedings had been full of irregularities, and omissions of acts required by statute. The assessors had not met for the purpose of hearing objections, as required by the charter of the city—the tax list had not been returned to the County Treasurer within the time required by law, and there had been other omissions. With regard to all, the court remarked that " neither of them, necessarily, impeach the justice of " the tax, and there is nothing in the case to show that the " complainant was especially aggrieved by either," and added, " we do not think he can sustain a bill in equity to enjoin the collection of a tax, legal and just in itself, merely on account of such irregularities." Perhaps this case goes further in sustaining tax levies than most courts are yet ready to follow, yet it illustrates the strong pressure of the necessity to

do so, in the interests of the public when the tax is just and is attacked upon grounds of form by those who have suffered no especial wrong.

In accord with these views, was decided the case of *Parish v. Golden,* which is very much like the one here in judgment upon the special point now being considered. (35 *N. Y.,* 462.) Assessors of the town of Oswegatchie, in their affidavit to their return to the assessment roll, omitted to state, as by law required, that they had excluded such property as was exempt from taxation. This was certainly a substantial omission, as the object of requiring such a clause in the affidavit could have only been to protect such property from becoming beclouded with tax claims. It was held, nevertheless, that " the omission of the assessors to comply with an " important provision of the statute, regulating their duties, " cannot be regarded as a *jurisdictional* defect without subject- " ing public officers to unnecessary vexation and embarrass- " ment." The decision was placed upon a broad foundation. The court declined to use any nice reasoning to show that the affidavit might be construed to fulfill the substantial requirements of the statute, but met the issue face to face on the ground that it did not. Mr. Justice Morgan, speaking for the court, says that " if it is a material statement, the " omission of it ought not to be regarded as fatal to the as- " sessment roll. Its omission is not evidence that the " assessors have not performed their duty in making the " valuations." The decision goes upon the ground that the affidavit is a simple verification, in which immaterial omissions may be wholly disregarded, or material ones, at any time supplied by amendment, even after the time required for the return of the roll, or its delivery to the supervisors.

The case of *VanRensselaer v. Witbeck* (7 *Barb.* 133) is somewhat in point. That was an action against the collector and one of the supervisors of the town who had signed the

collector's warrant.  It was in trespass for taking property under the warrant, and the power to collect the tax was relied on in defense.  Plaintiff insisted that the assessment roll was void; one of the grounds being that the certificate of the assessors attached thereto was not, either in form or substance, as required by statute.  The court below held the warrant a sufficient justification, and directed a non suit.  Upon appeal a new trial was denied.  Mr. Justice Harris, after alluding to several provisions of the statute defining the duties of assessors, as being directory, upon this point said: " So, too, I think the certificate required by the 26th section of the statute is to be regarded.  If the assessors have performed their duty in *making* the assessment roll, as they *may be presumed to have done,* the certificate amounts to nothing more than a solemn declaration on their part, that they *have* performed such duty.  It forms no part of their adjudication upon which the action of the board of supervisors is to be taken.  It is but the evidence of what the assessors have done, and therefore, it seems to me, would not, even in a direct proceeding, bringing in question the validity of the the assessment, be the subject of review.  At any rate, the *entire want* of such certificate, much less the omission of the assessor to adopt the form prescribed in the statute could not invalidate a tax charged by the board of supervisors upon the persons and property specified in the assessment roll, if the assessment itself were in all respects conformable to law." This case was reversed by the Court of Appeals, upon the ground that the assessors did not show affirmatively that they had violated the law, and also upon the ground that a proper certificate was necessary to give jurisdiction (3*d Section* 517), yet these views of the Supreme Court were approved in the case of *Sibley v. Smith et al,* 2 *Mich.,* 487.  In that case, it was held that the failure of the assessors to sign the roll was fatal, although they did sign a proper certificate—the statute

requiring both.   The distinction was taken that the signature$^s$ to the *roll* was necessary to complete it and give jurisdiction —was in fact an essential part of it, whilst the certificate to be appended was merely directory, might be omitted, and could not therefore, if added, supply another essential requisite, to-wit: the signature of the roll.

The affidavit required by our statute, is of the same nature as the certificate in the two cases last cited—having precisely the same object and purpose.   It would seem to follow that if the assessment itself were properly made and delivered to the County Clerk for the court, which we may presume in the absence of any showing to the contrary, jurisdiction to levy the tax would attach, notwithstanding a defect in a merely historical affidavit with regard to the mode of assessment.

Without protracting, to inconvenient length, the discussion on this branch of the case, we may cite as in accord with the view that the affidavit in the prescribed form is not jurisdictional, the cases of *Townsen v. Wilson,* 9 *Pa. St.* 270, in connection with *Sec.* 5206 *of Gantt's Digest; Keller v. Savage,* 20 *Maine,* 199 ; *Buffalo & State Line R. R. Co. v. Board of Supervisors of Erie Co.,* 48 *N. Y.* 93, in which the court seems to recede somewhat from the final position taken in the case of *VanRensselaer v. Witbeck, in 3d Selden (Supra)* and places that decision on the ground that it was a case where no presumption could be indulged; strongly intimating an approval not only of the decision of the *Court* in *Parish v. Golden, Supra,* but also of the expressions of Mr. Justice Morgan, who delivered the opinion upon the broad grounds above quoted.

*Bangor v. Lancy,* 21 *Maine,* 472, is an authority to show that an assessment list returned without due authentication, will be cured by a supplemental list afterwards filed, and duly authenticated, referring to the first.

County Courts and Courts of Probate within the range of subject matters entrusted to them, are Courts of Record with original jurisdiction, and the rule applies to them, as well as to public officers, that whatever they have been required by law to do, they will be presumed to have done, and that properly, unless the contrary be shown. It was the duty of the assessor to make an assessment and valuation of lands at money value, and it was the duty of the court to levy taxes with that assessment before it. The record in this case shows that an assessment was made and the affidavit of the assessor goes in aid of the presumption so far as to show that it was made correctly, and no wrong is shown. In view of the deplorable consequences which would ensue from holding that under such circumstances a whole tax for a County might be defeated, and supported by the views of the courts which we have cited, we conclude, that in this case the court did not fail of jurisdiction to levy the taxes in question, by reason of the failure of the assessor to set forth that the lands had been appraised at money value. Upon the petition for *certiorari* to quash the levy, we think the Circuit Court held properly, that to issue it would be an unwise exercise of its proper discretion.

Another objection to the assessment is that it does not appear that the assessor personally viewed the property to ascertain its value. 3. Failure of Assessor to examine lands. If that might be shown by parol in this proceeding, which certainly cannot be done, it would not avail. That duty is certainly directory, and impracticable, literally. No assessor can undertake to actually see every foot of land in his county, and the statute does not contemplate it. It is only one of the modes by which he is directed to ascertain value, and he ought to use it if necessary, but not the only one. He must determine the true value of each separate tract " from actual view, and from the best sources of information within his reach." If a whole levy could be

quashed because the assessor had neglected this duty in some instances, where he had sufficient information to act without it, it would be monstrous.

4. Filing Assessment.  There remains another objection to the levies, which is of a very grave nature. It is that the assessment list was not filed by the assessor in the time required by law.

Date of:  There is nothing to show when the assessment lists of 1880 were actually delivered to the Clerk of the County Court. The Clerk certifies to a copy of the affidavit of the assessor, as it appears of record for that year and as transcribed above. It bears date the 8th of October, 1880, which was on Friday preceding the 2nd Monday in the month. Presumption.  The presumption is that the date is correct, and that the affidavit was attached at the time of the return, and delivered with it. We have none of the court proceedings of that year. The orders, levying the taxes complained of, were made respectively on the 3d day of October, 1881 and the 2nd day of October, 1882.

5. Time of Filing assessment not essential.  Section 61 of the Revenue Act of 1873 directed, that each assessor should, on or before the 3d Monday in September, 1876, and every fourth year thereafter, deliver to the clerk an assessment list of real property, its value, &c., according to a prescribed tabular form, accompanied with his affidavit that he had appraised it at money value. The year 1880 was the second period for real estate assessments. Two questions arise: 1st, Was the time so important to the tax payers as to make its observance essential; and if so, 2nd, Is there room for the presumption that it may have been done in time, and the affidavit mis-dated or appended afterwards.

The same Act provided (Sec. 67) that the Board of Supervisors (which then formed what is now the County Court) should be a County Board for the equalization of real property, to meet on the 3d Monday in September, 1876, and every fourth year thereafter; and that the County Clerk

should then lay before them the returns of the real property made by the County Assessor.   Whereupon, it was made the duty of said supervisors after having first taken an appropriate oath, to proceed to equalize the values of real estate, so that each tract might be entered on the tax-books at its true value in money.

The object then of requiring the assessment list to be delivered to the clerk on or before the 3d Monday in September, was obviously that it might be there for the action of the Board of Supervisors.   It is also apparent that the object was not to give the citizens any time for previous inspection, as the assessor was not obliged to return it until the day when the supervisors were to meet.

Before the first periodical assessment was made, in 1876, the Constitution was changed, the Board of Supervisors abolished, and the County Court established in each County, in its stead ; and as a continuation of the Board.   All laws were continued in force not inconsistent with the new Constitution.

By Act of December 15th, 1875, Sec. 67 of the Act of 1873, which required the Board of Supervisors to meet quadrennially for equalization, was repealed as Section 5127 of Gantt's Digest; and it was made the duty of the assessors themselves, when the owners should undervalue their property, to place it at " a fair and common valuation;" providing that any person who might be aggrieved by the assessor's valuation should, five days before the term of the County Court, give notice to the assessor that he would file his complaint, returnable to the first term of he County Court, after the valuation.   It was made the duty of the County Court to investigate the matter ; and, if proper, correct the valuation, and amend the assessment, (Acts of 1875, p. 178).   Section 61, however of the Act of 1873, requiring the assessment to

be delivered to the clerk on or before the 3d Monday in September was not repealed.

By Act of Feb. 5, 1875, the regular terms of the County Courts were to be held each year all over the State, with some exceptions, not here applicable, on the first Monday in October; and by Act of March 18, 1879, a full court, composed of the justices, was to meet for the purposes of levying taxes, &c., on the first day of that term. Its duration, however, was not limited, for if a majority of the justices should not be present on that day, the absentees were to be summoned and power was given to those present to adjourn from day to day.

So the law stood in 1880. It must be presumed that if any levies of taxes were made at all that year, it was done after the assessment book had been delivered to the clerk by the assessor, and the assessment completed. The same object *as to time*, had been accomplished, which was contemplated by the Act of 1873. That is, the assessment was brought into court as the basis of the levies. Meanwhile there had been, hewever, a special provision made for the protection of the land owner by which, on giving five days notice before the first day of the court he might have the valuation of his land corrected. Did the return of the assessment after the beginning of the October term, when the notice was produced, cut off from the tax payer any material right? That seems to be the proper criterion for determining whether the time of the return was essential to its validity.

In *Walker et als v. Chapman, Gov., &c.* 22 *Ala.*, *new series p.* 126, a rule is laid down which seems to us reasonable and in accord with all the authorities. It is " that a statute " specifying a time within which a public officer is to per- " form an official act, regarding the rights of others, is direc- " tory merely, *as to the time* within which the act is to be " done, unless, from the nature of the act to be done, or the

" phraseology of the statute, the designation of the time
" would be considered a limitation on the power of the offi-
" cer. * * * * " If this rule," says the court, " is cor-
" rect in its application to individual rights, *a fortiori*, should
" it prevail in relation to public interests."

The phraseology of our statute does not, anywhere, ex-
press, or, of itself, imply, that the filing of the assessment list
after the 3d Monday in September shall be invalid. The
obvious nature of the Act is to have it before the court for
inspection when taxes are levied, unless we may further per-
ceive that a failure to file it at the time prescribed, has the
effect also to preclude a just right. This would give the
time an essential nature.

The language of the Act of 15th Dec., 1875, p. 178 of
Pamphlet Acts, gives a right to contest the valuation which
is not, it seems, necessarily, cut off by filing the assessment
after the meeting, or first day of the County Court. It is
not specially provided that the relief, as to the valuation, is
to be granted at the October term, and no other. The no-
tice to be given, by complainant, to the assessor, is to be re-
turnable to the first term of said court to be holden after said
valuation is made. There is nothing to prevent a correction
of the valuation at the January term, although it would be
attended with some inconvenience to the officers. That does
not concern the tax payer if he gets his right. It must be
confessed that this reasoning is somewhat nice, and would
not be applicable to a case which *might* arise, where the as-
sessment might not be completed and delivered to the clerk
until within five days before the October term. But it is the
legislative *intent* which we seek, and the intent not to make
time material, may consist with omissions to provide for ac-
cidental cases, where time would become so—if they be of a
nature to be probably overlooked.

Further; There remains the doubt as to whether we

might not hold, as some authorities would sustain us in doing, that the date of the affidavit, which is not shown to have been appended to, or endorsed upon, the assessment list, does not necessarily fix the true time of delivery to the clerk. There is opposed to it the counter-presumption in favor of the propriety and legality of the acts of courts and officers. Confessing these doubts after using all attainable means of clearing our minds, we are unable to say that it clearly appears to us that the levies of 1881 and 1882 should be quashed. The consequences would be probably disastrous to the business of the community.

We prefer to rest this case upon the following considerations :

The customary and proper obedience which citizens pay to the judgments, orders, and decrees, of their courts, is the foundation of social order, and the distinguishing feature of governments which can dispense with standing armies.   The sentiment is to be encouraged, and such obedience should not be too strictly at the peril of the citizen.   Although it is the duty of superior courts to keep those of inferior or limited jurisdiction within their proper boundaries, and by *certiorari*, on seasonable application, to check their excesses; or when no appeal can be had, correct their errors, yet it is not incumbent upon them to do so when the countervailing evils would be greater than to leave untouched what had been accomplished, especially after long acquiescence and when rights of property had been adjusted in accordance with the action of the courts.   In this view the writ of *certiorari* when sought to remove and quash proceedings has never been considered a, writ of right, but one in the sound discretion of the court invoked for its issuance.

Speaking with reference to such cases as this, Mr. Cooley says :  " The common law writ is not one of right but is " granted on the special facts; and the court has a discretion " to refuse to grant it in any case, when great mischiefs might

"be likely to follow the setting aside the proceedings com-
"plained of. It may even dismiss the writ, after it has been
"granted, without a consideration of the merits, if it was
"granted improvidently. The writ must be applied for *in*
"*due season*, and before the proceeding which it is desired
"to review has passed beyond the control of the tribunal
"in which it was taken." (*Cooley on Taxation, p.* 530). He
cites the case of *Libby et al v. Town of West St. Paul*, 14
*Minn.*, 248, which is very analogous to this. A few citizens
of the town applied for a writ of *certiorari* to bring up and
quash what was alleged to be an illegal assessment. The
court held that the relief affected all the other tax-payers of
the town, as this affects, if granted, all the real estate tax
payers of Phillips Co. It held that it was not "*just and right*"
that the proceedings for the collection of the tax should be
arrested, without giving the other tax payers an opportunity
to be heard, saying that such a precedent would, as a general
rule, necessarily result in great public detriment and incon-
venience. The court denied the writ expressly in the exer-
cise of a sound legal discretion, without considering the le-
gality of the assessment, and, wholly, from considerations of
public detriment and inconvenience, and the want of inhe-
rent justice and rectitude in the claim. Stronger still is the
case of the *School District No.* 1. *of Owosso v. The Joint
Board of School Inspectors*, 27 *Mich.*, 3, cited also by Mr.
Cooley. It was an application, by *certiorari*, to remove the
the action of certain town boards in creating a school dis-
trict. The application was made fifteen months after the
action was taken which it was sought to reverse. The court
held that after such a lapse of time it might be presumed
that the district had been organized in fact, officers elected,
and expenses incurred, and it declined at that late day to re-
view the proceedings by *certiorari*, without any regard to
the legality of the organization.

The case of the *People v. Supervisors of Alleghany*, 15 *Wend.*, 198, presents an exhaustive discussion of this particular question, and copious authorities to sustain the position that the sound discretion of the court in matters of *certiorari* may and should be governed by considerations of public convenience. It is the English doctrine, and had been the recognized doctrine in New York from an early period. The court cites *Lawton v. Commissioners of Highway*, 2 *Caines*, 182, in which Spencer, J., announced that " though the general power of the court" (to issue the writ and quash illegal proceedings) " is indisputable, there are cases where they will not interfere," citing as one of them an assessment of a land tax. Although this is more sweeping than this court is disposed to be, for there are cases of land taxes illegally assessed which it might be proper to quash where no great public detriment would ensue, yet it is strong in support of the right and propriety of the exercise of a wise discretion. See, further, as to the discretion of the court being controlled by considerations of public policy, the cases, in New York, of *People ex rel, Onderdonk v. Supervisors of Queens*, 1 *Hill*, 195; *People v. Commissioners of Taxes*, 43 *Barb.*, 494; *Fitch v. Comm'rs of Kirkland*, 22 *Wend.*, 133; *Mott v. Comm'rs of Highways*, 2 *Hill*, 472.

In the case of *Martin Lantis et als*, 9 *Mich.*, 324, the court announced that the writ of *certiorari* was, at common law, not one of right, but resting in the sound discretion of the court, to be allowed or not as might best promote the ends of justice; and that this discretionary power was not taken away by a statute requiring the writ to be issued within two years. In that case a writ of *certiorari* was quashed because of laches for only eleven months. In accord are the Arkansas cases of *Payne v. McCabe*, 37 *Ark.*, 318; *Burke v. Coolidge et als*, 35 *Ark.*, 180, which fully recognize the discretion of the court to refuse the writ.

It would not be easy to imagine a case appealing more strongly than this does to the court to exercise that discretion. The assessment was returned at least as early as the 8th of October, 1880. Taxes, we must presume, were levied and collected on it for the years 1880, 1881 and 1882 from the mass of land owners. No objection seems to have been made to it by petitioner or any one else until May 1883, which lacks but about four months of being three years afterwards. Two legislative sessions had intervened, which might by special act have provided for a valid assessment, if this be invalid. If the prayer be granted and the whole levies be quashed there will have been no valid collections of taxes from 1880 to 1884, the time of the next quadrennial assessment, at least on the great mass of lands which could not properly be brought into the annual assessments. If it be urged that these might have been, then we must presume they were for the years 1881 and 1882, and the petitioner has no case. The lists of those years are not shown.

Courts do not lend their aid either by injunction or *certiorari*, or any other discretionary process, in which those who invoke it are not entitled to stand upon strict legal rights, to cut down through the healthy business strata and over-growths of several years, for the purpose of eradicating even the most glaring irregularities, which have been acquiesced in until they become encysted in the business affairs of the community and become harmless. In such cases the popular maxim to " let well enough alone," becomes one of jurisprudence. The consequences would be too far reaching, and too detrimental to the public to justify interference. It would be doing a great public wrong for the sake of doing a little technical right. The petitioner does not pretend that his lands were not taxable, or that they were assessed too high, or that if he had paid his taxes, as others, we may presume,

have done, he would be one whit the worse, than if the assessment had been entirely unimpeachable.

The State herself by long acquiescence, and recognition of a municipal corporation, illegally created, may, on the same principles as those herein announced, and for the same reasons, become precluded from an information to deprive it of its franchises, and hold all its actions void, *State v. Leatherman et als*, 38 *Ark.*, p. 81.

We are satisfied that the Hon. Circuit Judge exercised a sound discretion in the public interests, even if we were clear that the assessment was illegal.

It was not his duty to treat the petition for a *certiorari* as a bill in equity for an injunction, and if had been there was no equity in it, in that aspect. It professed to be only a prayer for a writ of *certiorari*, attempting to show cause, and asking a restraining order. The statute authorizes the Circuit Court to make restraining orders, in proper cases, in connection with the law proceeding by *certiorari;* and to ask it, does not convert the case into an equity suit. *Gantt's Dig. Sec.* 1196..

6. PRAC-TICE: How certiorari converted into injunction.

Proceedings by *certiorari* at law are of a special nature, having an appropriate practice. With regard to proceedings by mandamus it was held by this court in *Crawford, Auditor v. Carson, Ex'r, et als*, 35 *Ark.*, that even if the nature of it was prohibitory it could not take the place of an injunction, unless reformed to assume that nature and filed on the equity side. In other words the Legislature, in abolishing forms of action, did not intend to destroy the distinct nature of these sorts of special legal proceedings, which retain their distinctive practice. If parties adopt those remedies they must abide by the practice and rules of law appertaining to them. Parties may, by leave of court, amend, and convert these proceedings into bills of equity, but they must choose for themselves. It is neither a just conception of the Code

of Civil Practice, nor a fair means of testing its promised benefits, to suppose the legislature meant to make an amalgamation of all possible applications to the courts for any conceivable thing, to be thrown into the courts indiscriminately, and taken up by the courts on their own motion, and assigned to their proper branches of proceedure. That duty does perhaps devolve on the courts in ordinary suits and actions, and in plain cases, but it does not extend to special proceedings. Cases of mandamus, *quo warranto*, and those begun by *certiorari*, remain strictly cases at law, and parties can only have legal relief, as long as they choose to adhere to those forms.

We find no error in the record.

Affirm.