GRAY (JONES v.). See Case No. 7,463.

## Case No. 5,721.

### GRAY et al. v. LARRIMORE.

[4 Sawy. 638; 2 Abb. (U. S.) 542.] [1]

Circuit Court, D. California. Aug. 12, 1865.

THE JURISDICTION OF EVERY COURT OPEN TO INQUIRY—DISTINCTION MADE IN THIS INQUIRY BETWEEN COURTS OF SUPERIOR AND INFERIOR AUTHORITY—LIMITATION UPON PRESUMPTION IN FAVOR OF JUDGMENTS OF SUPERIOR COURTS—SERVICE BY PUBLICATION — STATUTORY PROVISIONS TO BE STRICTLY FOLLOWED—THE STATUTE OF CALIFORNIA—THE DOCTRINE IN EQUITY AS TO ABSENT PARTIES — ALL MEMBERS OF A COPARTNERSHIP INDISPENSABLE PARTIES TO A SUIT — INVALIDITY OF A DECREE IN SUCH CASE AGAINST A PARTNER NOT PROPERLY BROUGHT INTO COURT.

1. The jurisdiction of any court over either the person or the subject-matter, may be inquired into whenever any right or benefit is claimed under its proceedings; and want of

[1] [Reported by L. S. B. Sawyer, Esq., and by Banjamin Vaughn Abbott, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 4 Sawy. 638, and the statement is from 2 Abb. (U. S.) 542.]

jurisdiction will render its judgment unavailable for any purpose.

[Quoted in Stansbury v. Inglebark, 20 D. C. 136.]

2. In making this inquiry the only difference recognized between courts of superior or general authority and courts of inferior or limited authority is, that with reference to the former jurisdiction is presumed until the contrary appears; but with reference to the latter, jurisdiction must be affirmatively shown by parties who claim any right or benefit under their proceedings.

[Cited in Gager v. Henry, Case No. 5,172.]

3. The presumption in favor of the judgments of superior courts is limited to jurisdiction over persons within their territorial limits, and to proceedings in accordance with the course of the common law. Wherever it appears, either from the record or by evidence outside, that the defendants were at the time of the alleged service upon them, beyond the reach of the process of the court, the presumption ceases, and the burden of establishing the jurisdiction over them is thrown upon the party who invokes the benefit of the judgment. So, too, the presumption ceases when the proceedings are not in accordance with the course of the common law.

[Cited in Galpin v. Page, Case No. 5,206.]

[Cited in Gibney v. Crawford, 51 Ark. 34, 9 S. W. 312.]

4. A statute authorizing a suit to be commenced against a non-resident upon constructive service of summons by publication, is in derogation of the common law, and its provisions must be strictly pursued in order to sustain the judgment recovered. A failure to comply with any of its requirements will be fatal, unless cured by the voluntary appearance of the party.

5. The requisites prescribed by the statute of California to obtain an order for the constructive service of summons in a civil action by publication, and the proofs required to show such service, stated and considered in a cause involving the rights of a purchaser under the judgment as against the defendant, suing after the reversal of the judgment to recover back the property sold under it.

6. The general doctrine of courts of equity in relation to absent parties is, that if persons out of the jurisdiction are merely incidental to those of the parties before the court, then inasmuch as a complete decree may be obtained without them, they may be dispensed with. But if such absent persons are to be active in the performance or execution of the decree; or if they have rights wholly distinct from those of the other parties; or if the decree ought to be pursued against them, then the court cannot properly proceed to a determination of the whole case without their being made parties; and the suit, so far at least as their rights and interests are concerned, should be stayed; for, to this extent, it is unavoidably defective.

7. All the partners, or their representatives, are indispensable parties to a bill filed to procure a dissolution of the copartnership and an account.

8. Where, upon a bill filed in a state court, to procure a dissolution of copartnership and an account, one of the partners is not a resident of the state in which the suit is commenced, and cannot be served with process therein, the suit is defective and cannot proceed, unless service by publication is authorized by the law of the state, and is made in strict conformity therewith, or unless there is a voluntary appearance.

[Cited in Cissell v. Pulaski Co., 10 Fed. 893; Martin v. Barbour, 34 Fed. 708.]

Trial of issues by the court. This was an action to recover the possession of land in San Francisco, and was brought by Matilda C. Gray and Franklina C. Gray (an infant suing by next friend) against Richard Larrimore and others. The facts immediately material to the decision are stated in the opinion of the court. See, also, Gray v. Brignardello, 1 Wall. (68 U. S.) 627.

Philip G. Galpin, for plaintiff.

Williams & Thornton, for defendant.

FIELD, Circuit Justice. This was an action to recover the possession of certain real property situated within the city of San Francisco, and the rents and profits of the same whilst withheld from the plaintiffs. It was tried by the court without a jury, pursuant to a stipulation of the parties at the June term of 1865.

Both parties claimed title from the same source—from Franklin C. Gray, who died intestate in July, 1853, possessed of a large property, real and personal. Of the real property, the premises in controversy were a portion. The deceased left surviving him a widow, Matilda C. Gray, and a posthumous child, Franklina C. Gray, and by the statute of descents and distributions of California, they inherited his entire estate in equal shares.

The defendants claimed title to the premises by virtue of a sale and deed, made under a decree rendered in an action in a district court of the state, to which the widow and child are alleged to have been parties. It was upon the validity of this decree, and consequent sale and deed, that the case turned. The action in which the decree was rendered arose in this wise: In February, 1854, William H. Gray, a brother of the deceased, instituted a suit in equity, in a district court of the state, against Joseph C. Palmer and Cornelius J. Eaton; who had been appointed administrators of the estate of Franklin C. Gray, and against the widow, Matilda, and one James Gray. Subsequently the child Franklina was made a party defendant. In his bill the complainant alleged that a copartnership had existed between him and his brother since 1848, and that it embraced all their business operations and all their purchases of real property, although the titles were taken in the individual name of the deceased. The partnership stated was both universal and dormant, the interest of the complainant extending to one-third of all acquisitions of every kind and description of both copartners. The object of the bill was to settle up the affairs of the alleged copartnership and obtain a decree for the one-third claimed by the complainant.

In January, 1855, Cornelius J. Eaton, who had been a clerk of the deceased, and who, as administrator, was made a defendant in the above action of Gray, resigned his trust, and instituted a suit in equity, in a district court of the state, against Palmer, the remaining administrator, and against the widow and child. In his bill he also alleged that a copartnership had existed between

himself and the deceased; that it commenced in January, 1851, and embraced all the property, both real and personal, of both, and all their business operations, and that his interest extended to one-fourth of the property possessed at the time, and of all future acquisitions. The object of the suit was to settle up the affairs of the alleged copartnership, and to obtain a decree adjudging to the complainant the one-fourth part of the estate claimed.

The amendment to the bill in the suit brought by Gray, by which the child Franklina was made a party, alleged that she was absent from the state, and resided with her mother at Brooklyn, in the state of New York. The bill filed by Eaton averred that the child was not a resident nor a citizen of California, but was a resident and citizen of the state of New York, or of the District of Columbia. Service of summons upon her was therefore attempted by publication in both cases. When, as was supposed, the service had been in this way effected, a guardian ad litem for the child was appointed by the court in both cases. The appointment was made in each case upon the petition of the complainant. The other defendants appeared by attorneys and answered.

On the twenty-third of October, 1855, upon the stipulation of the guardian and the attorneys of the other defendants, the two actions were consolidated into one. Four days subsequently a decree was entered without trial, upon the consent and agreement of the parties. By this decree it was adjudged that a partnership had existed between Eaton and the deceased, which embraced all the property, real and personal, and all the business of both, and that in this partnership Eaton had an interest of one-fourth; that a similar copartnership had also existed at the same time between Gray and the deceased, in which Gray had an interest of one-third; that the latter copartnership was subject to the copartnership of Eaton; and that, therefore, Eaton should first take one-fourth of the estate, and Gray one-third of the remaining three-fourths, and that the other two-fourths should be equally divided between the widow and child. By the decree, a reference was also ordered to a commissioner, to take and state an account of the business, profits, and property of the two copartnerships, with directions upon the confirmation of his report to sell all the property of both, and upon the confirmation of the sales to execute proper conveyances to the purchasers.

Upon the statement of the accounts by the commissioner, the deceased was found largely indebted to each of his alleged copartners. Although Gray had been interested, as pretended, in one-third of the property and profits of a universal copartnership with his brother for nearly five years, and had been oftentimes pecuniarily embarrassed in transactions with other parties, and on one occasion, as late as March, 1853, had even borrowed money of his brother, on interest at the rate of three per cent. a month, he had been careful to preserve untouched his proportion of the large sums and property accumulated by the alleged copartnership, and therefore had refrained from drawing any moneys from the concern. The deceased, in the meantime, as counsel very pointedly observe, had spent the money of the alleged firm as freely as though it had been his own. Like prudential considerations appear to have governed, except in one instance, the conduct of the alleged partner Eaton during the period of two years and a half. It very naturally turned out, under these circumstances, upon the accounting, that the indebtedness of the deceased to both copartners for the excess over his share, drawn by him from the concern, was large. It was found to be so large that it absorbed the entire portion of the estate, which would otherwise have gone to the widow and child. Out of property inventoried in the probate court of San Francisco at $237,000, there was nothing left for them. Indeed, the estate of the deceased was brought in debt to these alleged universal copartners over $3,500.

By a decree of the court, bearing date on the seventh of April, 1856, the report of the commissioner was confirmed, and a sale of the entire property, real and personal, of the alleged copartnerships, was ordered. Objection was taken to the admissibility of this decree, but it was treated as properly in the case. The sale which it directed was made on the third of May, 1856. At that sale, the defendant, Larrimore, became the purchaser of the property in controversy, and subsequently received a deed from the commissioner, and went into possession, and had continued in the possession and use of the premises ever afterward. The other defendants held under him.

On appeal to the supreme court of the state the decree of the district court in the consolidation action was reversed, and it was held that the evidence presented did not warrant the conclusion that a copartnership had existed between William H. Gray and the deceased. The case was accordingly remanded to the district court, and afterward both suits were dismissed.

The plaintiffs then brought the present suit of ejectment. The defendants relied, as already stated, upon the validity of the decree, in the consolidated action, for the sale of the premises, notwithstanding its subsequent reversal.

On the other hand, the plaintiffs insisted that the district court never acquired jurisdiction of the person of the child Franklina by service of summons or by her appearance; and that in her absence as a party to the proceedings, no valid decree for the sale of the alleged partnership property could pass; in other words, that she was an indispensable party to the ascertainment of the

debts, and the settlement of the accounts of the alleged copartnership, and the sale of the property belonging ·to them. The questions presented, then, were: Was she brought before the court by service of process, or did she otherwise appear in the suits? And if she neither was served nor appeared, was it competent for the court to proceed with the suits in her absence?

It is a familiar doctrine, that the jurisdiction of any court over either the person of the defendant or of the subject-matter, may be inquired into whenever any right or benefit is claimed under its proceedings. The want of jurisdiction will render its judgments and decrees unavailable for any purpose. Borden v. Fitch, 15 Johns. 140; Williamson v. Berry, 8 How. [49 U. S.] 541. The doctrine is as applicable to the proceedings of courts of superior or general authority as it is to courts of inferior or limited authority. The difference between these courts in this respect relates only to the presumptions raised by the law. With reference to courts of superior or general authority, jurisdiction is presumed until the contrary appears; but with reference to courts of inferior or limited authority, the jurisdiction must be affirmatively shown by parties who claim any right or benefit under their proceedings. Mills v. Martin, 19 Johns. 33; Bloom v. Burdick, 1 Hill, 140.

The general presumption indulged in support of the judgments and decrees of the superior courts is, however, limited to jurisdiction over persons within their territorial limits; persons who can be reached by their process, and also over proceedings which are in accordance with the course of the common law. Whenever it appears, either from inspection of the record, or by evidence outside the record, that the defendants were at the time of the alleged service upon them beyond the reach of the process of the court, the presumption ceases, and the burden of establishing the jurisdiction over them is thrown upon the party who invokes the benefit or protection of its judgments and decrees. So, too, the presumption ceases when the proceedings are not in accordance with the course of the common law. With reference to such proceedings, the superior courts, though in other respects possessing general authority, exercise only a limited and special jurisdiction.

In the bills of complaint in the two actions of Gray and Eaton, the absence of the infant Franklina from California, and her residence in another state, are alleged. The presumption of jurisdiction over her person by the district court is thereby repelled, and it remains for the defendants to show that by means provided by the statute in such cases, the jurisdiction was acquired. The statute substitutes, in cases of a non-resident and absent defendant, constructive service, by publication of the summons in place of personal service; and it designates the facts which must appear to authorize an order for the publication, the period for which the publication must be made, and the manner in which such publication must be proved. The statute is in derogation of the common law, and its provisions must be strictly pursued. A failure to comply with any of the particulars stated will be fatal, unless cured by the voluntary appearance of the party. In the first place, to obtain the order it must appear, by affidavit, to the satisfaction of the court or the judge, that the defendant is at the time a non-resident, or absent from the state; and that the plaintiff has a cause of action against him, or a cause of action to the complete determination of which he is a necessary or proper party. Until these facts appear, not by the complaint, but by affidavit, no order can be legally issued. "In granting the order," says the supreme court of the state in a recent case, "the court or judge acts judicially, and can know nothing about the facts upon which the order is to be granted, except from the affidavit presented by the applicant. There is no other way of bringing the fact of residence to the judicial knowledge of the court or judge." Ricketson v. Richardson, 26 Cal. 149, and Pr. Act, § 30. In the second place, the order must direct the publication to be made in a newspaper to be designated as most likely to give notice to the defendant, and the publication must not be less than three months. If the residence of the non-resident or absent defendant be known, the order must also direct a copy of the summons and complaint to be forthwith deposited in the post-office, addressed to him at his place of residence. Pr. Act, § 31. And in the third place, proof of such service must be made "by the affidavit of the printer, or his foreman or principal clerk, showing the same, and an affidavit of a deposit of a copy of the summons in the post-office, if the same shall have been deposited. Id. § 32.

Tested by these provisions of law, the proceedings to secure service by publication, and the proof of publication, were defective in essential particulars:

1. There was no affidavit presented to the court in either case when the order was obtained. The action of the court, so far as the record discloses, may have been taken in each case upon the verbal statement of the plaintiff or of his counsel.

2. In the case of Eaton v. Palmer [11 Cal. 341] there was no affidavit or other proof of publication; and in Gray v. Eaton [5 Cal. 448] the affidavit does not show that the affiant was either "the printer, or his foreman, or principal clerk." It merely describes himself as being the clerk; it did not state such to be the fact. This description was not a compliance with the requirements of the statute. The authorities are uniform on this point. In the recent case of Steinbach v. Leese, in the supreme court of the state, the precise question was considered

and determined. 27 Cal. 295. There the affiant described himself as principal clerk in the office of the newspaper in which the publication was made, but did not aver that such was his position in fact, and the court held that the affidavit was fatally defective; that by the statute the only persons competent to testify as to the publication are the "printer, his foreman, or principal clerk;" and that the affiant is one of them, is of itself a substantive fact, which must be proved as such before the court can proceed to render judgment. Staples v. Fairchild, 3 Comst. [3 N. Y.] 43; Payne v. Young, 4 Seld. [8 N. Y.] .158.

There was an attempt made to supply the omission of the affidavit, by evidence at the trial, that the affiant was in fact the principal clerk of the printer; but such evidence was clearly inadmissible. The statute prescribes the character of the evidence which shall be produced, and by whom it shall be given. It is not sufficient that other proof equally persuasive and convincing may be offered. The statutory proof will alone suffice.

If the omission could be remedied at all at this late day, which is very questionable, it could only be done by the direct action of the court to which the record belongs. It is not competent for this court to receive parol testimony to supply the omission. Noyes v. Butler, 6 Barb. 617; Lowry v. Cady, 4 Vt. 506.

The defects stated are decisive upon the question whether the district court ever acquired jurisdiction over the person of the infant, Franklina. As to her, the alleged record of that court is no record. The position urged by counsel, that the mother, as the natural guardian of the infant, had the right to appear for her without service on her, does not require consideration, for no such appearance was made or attempted. The guardian ad litem for the infant was appointed upon the application of the plaintiff in each case. But were it otherwise the result would be the same. There can be no appearance of the infant until a guardian ad litem is appointed, and no such appointment can be made until service on the infant is effected. Gray v. Palmer, 9 Cal. 638. The appearance of the mother on her own behalf, or any request by her attorney for the appointment of a guardian, could not dispense with the service.

The infant not having been brought into court, the next inquiry is as to the effect of the proceedings and decree upon the interests of the widow, Matilda. The object of the two actions of Gray and Eaton, and of course of the consolidated action, was, as already stated, to settle up the affairs of the alleged capartnerships and to obtain a distribution of the effects and property of the copartners according to their respective interests. To these actions the deceased. had he been living, would have been an indis-

pensable party, their aim being to dispose of property the title to which stood in his name, and of which he was apparently the sole owner. Any decree therein distributing or settling the property without his presence would have been a nullity, a confiscation of his rights without his day in court—a simple act of judicial usurpation. The same necessity which would have required the presence of the deceased, had he been living, exacts the presence of those who, upon his death, became clothed with the title and apparent ownership of the property. To reach the property and give the court authority to interfere with it· and divest the owners of their title by ordering a sale, it was necessary to establish the existence of .the alleged copartnerships, and that there were debts owing by them. Both of these facts were essential to the jurisdiction of the court, and the foundation of the entire proceedings. The establishment of either of them necessarily affected, to the same extent, the interests of both the widow and child. If the copartnerships existed, they embrace the property claimed by both; they could not exist with reference to the interest which descended to the widow, and not also exist with reference to the interest which descended to the child. They embraced the whole interest in the property, not an undivided interest. Therefore no valid determination of the fact of copartnerships could be made against the widow which would not be equally valid against the child; and if no valid determination could be made against the child, she not being brought into court, there could be none against the widow. The fact of copartnership being established, its operation upon the copartnership property was incapable of division or abridgment.

The same objections apply to the debts alleged to be owing by the copartnerships. If they were legally established, they become liens not upon the interest of the widow alone, but upon the entire property.

The conclusion which follows from these views is, that the child, Franklina, was an indispensable party to any valid adjudication of the facts of partnership and debt, and consequently to any binding decree for the sale of the alleged copartnership property.

The doctrine of equity, when some of the parties are out of the jurisdiction of the court, is well stated by Mr. Justice Story in his Equity Pleadings. Sections 81–83. After commenting upon the general rule that all persons legally or beneficially interested in the subject-matter of a suit in equity should be made parties. and stating an exception with reference to persons without the jurisdiction, who cannot consequently be reached by the process of the court, the learned justice says: "It is an important qualification ingrafted on this particular exception that

persons who are out of the jurisdiction, and are ordinarily proper and necessary parties, can be dispensed with only when their interests will not be prejudiced by the decree, and when they are not indispensable to the just ascertainment of the merits of the case before the court. The doctrine ordinarily laid down on this point is, that when the persons who are out of the jurisdiction are merely passive objects of the judgment of the court, or their rights are merely incidental to those of the parties before the court, then, inasmuch as a complete decree may be obtained without them, they may be dispensed with. But if such absent persons are to be active in the performance or execution of the decree; or if they have rights wholly distinct from those of the other parties, or if the decree ought to be pursued against them, then the court cannot properly proceed to a determination of the whole cause without their being made parties. And under such circumstances, their being out of the jurisdiction constitutes no ground for proceeding to any decree against them or their rights or interests; but the suit, so far at least as their rights and interests are concerned, should be stayed; for to this extent it is unavoidably defective. In many instances, the objection will be fatal to the whole suit."

The case of a bill brought by one partner against several other copartners, one of whom was out of the jurisdiction, praying for an account and dissolution of the copartnership, is given by Story, in illustration of this last position, that the objection will sometimes be fatal to the whole suit, for "the absent partner," says the justice, "would have a distinct and independent interest, and would seem to be an indispensable party, since the decree must affect that interest, and indeed would pervade the entire operations of the partnership." The case of Browne v. Blount, 2 Russ. & M. 83, is also referred to as illustrating the same position. In that case a judgment creditor of one Blount had sued out a writ of elegit upon his judgment, and had filed his bill to reach certain real estates, which were vested in trustees upon certain trusts, under which Blount was entitled to the rents and profits during his life. The trustees and certain parties interested under the trusts, and others having a charge upon the trust estates were made parties, but Blount was abroad, and had been for years previous to the institution of the suit, and was not therefore made a party. The court held that "Blount being the person whose interests were sought to be affected by the decree, the suit could not proceed in his absence." See in further illustration of the doctrines stated: Mitf. Eq. Pl. 31, 32; Inchiquin v. French, 1 Amb. 33; Fell v. Brown, 2 Brown, Ch. 276; Beaumont v. Meredith, 3 Ves. & B. 180; Evans v. Stokes, 1 Keen, 32; Russell v. Clark, 7 Cranch [11 U. S.] 98;

Mallow v. Hinde, 12 Wheat. [25 U. S.] 194; Fuller v. Benjamin, 23 Me. 255; Spurr v. Scoville, 3 Cush. 578.

In Evans v. Stokes, the bill was filed to have the affairs of a joint-stock company, which was a copartnership, wound up and settled under the decree of the court, and accounts of the partnership property taken, and a sale of some portion of the property made by the directors set aside, and it was held that all the members of the company, however numerous, must be made parties. "It is perfectly obvious," said the master of the rolls, "that a suit, where all the accounts of the partnership are to be taken, and the rights of all the parties are to be determined, as between themselves, and under the various circumstances in which they stand in relation to each other, some of them, for instance, having paid their calls, and others having omitted to do so, cannot be prosecuted in the absence of any of those parties."

The case of Fuller v. Benjamin is equally pointed. In that case four persons had been copartners, two of whom had become insolvent, and were out of the state; the suit was brought by one of the partners against the solvent member. On demurrer, for want of parties, the court said: "In cases of partnership it must be difficult, if not impracticable, to proceed in equity without the presence of all the copartners or their legal representatives. Each must be expected to have claims, either for services rendered or advances made, without the adjustment for which, it will be impossible to ascertain what may be due from or to the joint concern by each; or what just claim any one or more of them may have against any one or more of the others. Until such an ascertainment shall have been made, it will be impossible to pass a decree, which shall be founded upon the principles of justice, as to their several rights." And again: "The plaintiff in this case would seem to be without remedy, either at law or in equity. In Story on Equity Pleadings (sections 82, 83, 152, 218), it is clearly shown that a court of equity cannot take cognizance of a case in the predicament of the one here exhibited. Although the partners not present are insolvent, yet are they indispensable parties whose rights might be affected by a decree, and who must be present to be able to afford information as to their own claims in connection with those of the others, and if bankrupts, their assignees should be made parties."

The condition of the alleged copartners, Gray and Eaton, might have been similar to that of the plaintiff in this last case—without relief either at law or in equity—had there not been a provision in the legislation of the state for securing service by publication, upon the non-resident infant. As they did not pursue the course pointed out by the statute, their present position with ref-

erence to the subsequent proceedings, and the decree rendered, is precisely what it would have been if no such statute had existed. The principle upon which the several cases cited proceed is fundamental, and underlies the administration of justice in all courts of equity.

The conclusion which we have reached renders it unnecessary to pass upon the objection taken to the introduction of the decree of April 7, 1856. The decree has never been produced upon any previous trial of the actions brought by the widow and child; it is not embraced in the judgment roll of the consolidated action of Gray & Eaton; it did not form any portion of the record which was presented in that action to the supreme court of the state, or of the record in the recent action of ejectment of Gray against Brignardello, before the supreme court of the United States. For nearly nine years the original document, signed by the district judge, has lain unknown in the desk of the commissioner in this city. It appears also that subsequently, on the fourteenth of May, 1856, the decree was amended for some alleged want of conformity to the previous report of the commissioner and that a new decree was substituted in its place. It may well be doubted whether, under these circumstances, the decree should have been received in evidence; but, as stated, the question of its admissibility is rendered immaterial from the conclusions reached on other grounds.

The tax deeds produced by the defendant Larrimore do not aid the defense. He was in possession of the premises at the time the taxes were levied, and the sales by the tax collector were made, and it was his duty to have paid the taxes. Moss v. Shear covers his case. 25 Cal. 38. Nor did the assessment roll for the years in which the taxes were unpaid show any valuation of the property. Hurlbutt v. Butenop, 27 Cal. 50; Woods v. Freeman, 1 Wall. [68 U. S.] 398.

As to the rents and profits of the premises since the defendant Larrimore went into possession, there is some conflict in the evidence. Our conclusion is, that the premises have been worth to him since May 26, 1856, $100 a month, and that amount will be found as the monthly rents and profits.

The plaintiffs are entitled to a joint judgment against all the defendants for the possession of the premises in controversy, and the plaintiff, Franklina, to a several judgment against the defendant, Larrimore, for one-half of the estimated rents and profits from May 26, 1856; and the plaintiff, Matilda, to a several judgment against him for the remaining half of the rents and profits, commencing three years before the filing of the complaint in the present action—the rents and profits to be calculated in both cases up to this date. Galpin v. Page, 18

Wall. [85 U. S.] 350; Id. [Case No. 5,206]; also Neff v. Pennoyer [Id. 10,083].

[NOTE. The validity of the decree of sale involving this estate, was further discussed in a lengthy opinion by Sawyer, Circuit Justice, in Case No. 5,205. The plaintiff in the action of ejectment there instituted was one Galpin, who had acquired such title to the premises in controversy as belonged to Matilda and Franklina C. Gray after the sale and conveyance made under said judgment, and the defendant was Lucy B. Page, the heir of the purchaser at the sale by the commissioner. The court sustained the validity of the decree, and gave judgment for the defendant. Subsequently, in another action between the same parties to recover possession of the premises, Field, Circuit Justice, gave judgment for the plaintiff, substantially the same points being involved. Id. 5,206.]